Citation Nr: 1736708 
Decision Date: 08/31/17 Archive Date: 09/06/17

DOCKET NO. 10-43 893 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUES

1. Entitlement to a rating in excess of 20 percent from February 23, 2009, to September 23, 2015, and a rating in excess of 40 percent thereafter, for lumbar spine intervertebral disc syndrome, also diagnosed as L2-L4 sensory deficits in the external cutaneous nerve and sciatic nerve.

2. Entitlement to a rating in excess of 10 percent from February 23, 2009, to September 23, 2015, for radiculopathy of the lower left extremity associated with lumbar spine intervertebral disc syndrome, also diagnosed as L2-L4 sensory deficits in the external cutaneous nerve and sciatic nerve.

3. Entitlement to a rating in excess of 10 percent from February 23, 2009, to September 23, 2015, for radiculopathy of the lower right extremity associated with lumbar spine intervertebral disc syndrome, also diagnosed as L2-L4 sensory deficits in the external cutaneous nerve and sciatic nerve.

4. Entitlement to service connection for an acquired psychiatric disorder, to include posttraumatic stress disorder, to also include associated hair loss.


REPRESENTATION

Veteran represented by: The American Legion


ATTORNEY FOR THE BOARD

A. Borman, Associate Counsel


INTRODUCTION

The Veteran served on active duty from December 1990 to January 1995. This matter comes before the Board of Veteran's Appeals (Board) on appeal of May 2010 and January 2016 rating decisions by the Department of Veterans Affairs (VA) Regional Office (RO) in Winston-Salem, North Carolina.

The Board has expanded the Veteran's original claim for a service connection for PTSD to encompass all acquired psychiatric disorders. See Clemons v. Shinseki, 23 Vet. App. 1 (2009) (the scope of a disability claim includes any disability that may reasonably be encompassed by the claimant's description of the claim, reported symptoms, and the other information of record). Additionally, as the Veteran has claimed hair loss as a symptom of her acquired psychiatric disorder, the Board has included that claim as part of the Veteran's overall claim for an acquired psychiatric disorder. 

The issue of entitlement to an increased rating for a lumbar spine disability was remanded by the Board in August 2015 for additional development and is now ready for adjudication. 

This appeal is comprised entirely of documents contained in the Virtual VA paperless claims processing system as well as the Veterans Benefits Management System (VBMS). Accordingly, any future documents should be incorporated in the Veteran's VBMS file.

The issue of entitlement to service connection for an acquired psychiatric disorder, to include posttraumatic stress disorder, , to also include associated hair loss, is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. Evaluation of the Veteran's intervertebral disc syndrome (IVDS) under the General Rating Formula for Diseases and Injuries of the Spine results in the highest evaluation when all disabilities are combined under 38 C.F.R. § 4.25.

2. Throughout the appeal period, the Veteran's IVDS was characterized by forward flexion of greater than 30 degrees but not greater than 60 degrees; forward flexion of 30 degrees or less or favorable ankylosis, or periods of incapacitating episodes have not been shown. 

3. Throughout the appeal period, the Veteran's bilateral radiculopathy of the lower extremities has been characterized by moderate impairment.


CONCLUSIONS OF LAW

1. From February 23, 2009, to prior to September 23, 2015, the criteria for a rating in excess of 20 percent for lumbar spine intervertebral disc syndrome, also diagnosed as L2-L4 sensory deficits in the external cutaneous nerve and sciatic nerve, have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. § 4.71a, Diagnostic Codes (DCs) 5237, 5243 (2016).

2. From September 23, 2015, onwards, the criteria for a 20 percent rating, but no more, for lumbar spine intervertebral disc syndrome, also diagnosed as L2-L4 sensory deficits in the external cutaneous nerve and sciatic nerve, have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. § 4.71a, DCs 5237, 5243 (2016).

3. From February 23, 2009, onwards, the criteria for a 20 percent rating, but no more, for radiculopathy of the lower left extremity associated with lumbar spine intervertebral disc syndrome, also diagnosed as L2-L4 sensory deficits in the external cutaneous nerve and sciatic nerve, have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. § 4.124a, DC 8520 (2016).

4. From February 23, 2009, onwards, the criteria for a 20 percent rating, but no more, for radiculopathy of the lower right extremity associated with lumbar spine intervertebral disc syndrome, also diagnosed as L2-L4 sensory deficits in the external cutaneous nerve and sciatic nerve, have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. § 4.124a, DC 8520 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Veteran's Claims Assistance Act

VA has a duty to notify and assist claimants in substantiating claims for VA benefits. See, e.g., 38 U.S.C.A. §§ 5103, 5103A (West 2014) and 38 C.F.R. § 3.159 (2016). In the instant case, VA provided adequate notice in letters sent to the Veteran. 

VA also has a duty to assist a claimant in the development of a claim. This duty includes assisting the claimant in the procurement of relevant treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159 (2016). The Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). Service treatment records, VA treatment records, and VA examinations are associated with the claims file. 

The Board notes that this appeal was remanded in August 2015 in order to obtain a new VA examination. In September 2015, the Veteran underwent a thorough examination conducted by her physician. Additionally, in October 2016, VA provided the Veteran with another examination. The examiners reviewed the accurate history, considered lay statements, and provided clinical findings and diagnoses. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). Therefore, the Board is now satisfied that there has been substantial compliance with this Remand. See Stegall v. West, 11 Vet. App. 268 (1998); Dyment v. West, 13 Vet. App. 141, 146-47 (1999). 

The Board recognizes that the October 2016 VA examiner did not measure the range of motion of the Veteran's spine in both active and passive motion. See Correia v. McDonald, 28 Vet. App. 158, 168 (2016). However, the September 2015 examiner explicitly measured the additional functional loss due to active and passive motion. Therefore, the Board finds that the VA examinations, when considered together, are sufficient, especially in light of the fact that the Veteran did not raise any argument regarding the impact of the deficiencies in testing as noted in Correia. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015), cert. denied, 137 S. Ct. 33, 196 L. Ed. 2d 25 (2016) ("A veteran's interest may be better served by prompt resolution of his claims rather than by further remands to cure procedural errors that, at the end of the day, may be irrelevant to final resolution and may indeed merely delay resolution.

Moreover, while the Board has previously found that the June 2009 VA examination was inadequate, it does have some probative value in terms of the Veteran's stated symptoms, especially considering the scant amount of evidence from that period on appeal. While the VA examiner appeared to use improper pronouns, it is clear that the examination was of the Veteran in this appeal. 

There is no indication of additional existing evidence that is necessary for a fair adjudication of the claims that are the subject of this appeal. Hence, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist. 

Increased Ratings

The Veteran filed a claim on February 23, 2009, seeking an increased rating for her service-connected lumbar spine IVDS. 

Disability evaluations are determined by the application of a schedule of ratings which is based on average impairment of earning capacity. Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability. See 38 C.F.R. § 4.1 (2016). Separate diagnostic codes identify the various disabilities. While the Board typically considers only those factors contained wholly in the rating criteria, it is appropriate to consider factors outside the specific rating criteria when appropriate in order to best determine the level of occupational and social impairment. See Mauerhan v. Principi, 16 Vet. App. 436 (2002); Massey v. Brown, 7 Vet. App. 204, 208 (1994). 

Where there is a question as to which of two separate evaluations shall be applied, the higher evaluation will be assigned if the disability more closely approximates the criteria required for that particular rating. 38 C.F.R. § 4.7 (2016). When a reasonable doubt arises regarding the degree of disability, such doubt will be resolved in favor of the Veteran. 38 C.F.R. § 4.3 (2016).

Where evidence indicates that the degree of disability increased or decreased during appeal period following the assignment of the initial rating, "staged" ratings may be assigned for separate periods of time based on facts found. See Fenderson v. West, 12 Vet. App. 119, 126 (1999). The analysis in the following decision is therefore undertaken with consideration of the possibility that different ratings may be warranted for different time periods.

Where entitlement to compensation has already been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Nevertheless, where the evidence contains factual findings that show a change in the severity of symptoms during the course of the rating period on appeal, assignment of staged ratings would be permissible. Hart v. Mansfield, 21 Vet. App. 505 (2007).

Ratings under for spine disorders are assigned based on the General Rating Formula for Diseases of the Spine or based on incapacitating episodes, whichever results in the higher evaluation. Here, at the time she filed her claim in February 2009, the Veteran was assigned a 20 percent rating under 38 C.F.R. § 4.71a, DC 5237 (addressing lumbosacral or cervical strain). However, in a January 2016 rating decision, the RO increased the Veteran's rating to 40 percent as of September 23, 2015, under 38 C.F.R. § 4.71a, DC 5243 (addressing IVDS). 

After the Veteran submitted a substantive appeal, VA Form 9, but before the appeal was formally certified to the Board, the RO assigned separate ratings for radiculopathy of the bilateral lower extremities at 10 percent each from February 23, 2009, to September 23, 2015. These separate ratings could not extend past September 23, 2015, as separate ratings for neurological abnormalities is not for application when a spine disorder is rated based on incapacitating episodes. See The Adjudication Procedures Manual M21-1, Part III.iv.4.A.3.a (May 25, 2017). 

February 29, 2009 to September 23, 2015

From February 23, 2009, to September 23, 2015, the Veteran received a 20 percent rating for her lumbar spine disability under 38 C.F.R. § 4.71a, DC 5237 (addressing lumbosacral strain). Under this rating formula, the next-higher 40 percent evaluation is warranted when the evidence shows:
* Forward flexion of the thoracolumbar spine to 30 degrees or less; 
* Favorable ankylosis of the entire thoracolumbar spine; or
* Intervertebral disc syndrome with incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months. 
38 C.F.R. § 4.71a, DCs 5237, 5243 (2016). 

The Board finds that the Veteran is not entitled to a rating in excess of 20 percent for her lumbar spine disability for this period on appeal. Specifically, at her VA examination in June 2009, the Veteran stated that she has experienced spine symptoms since approximately 1992, and experienced stiffness, fatigue and some spasms. However, she denied decreases motion or weakness. Upon examination, she exhibited a normal gait and posture, and required no assistive device for ambulation. Her flexion was limited by pain to only 90 degrees, and ankylosis was not shown. 

A rating in excess of 20 percent is also not warranted based on incapacitating episodes. Indeed, at this VA examination, she denied the presence of such episodes. Therefore, a rating in excess of 20 percent is not warranted on this basis. 

When considering these ratings, the Board has considered the impact of functional loss due to flare-ups of pain, fatigability, incoordination, pain on movement, and weakness. 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca v. Brown, 8 Vet. App. 202, 206-7 (1995). In this case, while the Veteran complains of pain in her back, the additional functional loss caused by the pain was taken into account for her range of motion measurements during her September 2015 examination. See Mitchell v. Shinseki, 25 Vet. App. 32, 37-43 (2011) (pain must affect some aspect of the normal working movements of the body such as strength, speed, coordination or endurance). Put another way, while the Veteran has complained of pain, these complaints are adequately contemplated in the rating she currently receives.

Next, when evaluating the extent of a Veteran's spine disability, the Board is required to consider whether a separate evaluation is warranted for any associated neurological abnormality including, but not limited to, bowel or bladder impairment, neurological impairment in the extremities or other such disorders, which are to be evaluated under the appropriate diagnostic code. See 38 C.F.R. § 4.71(a), Note 1.

From February 23, 2009, to September 23, 2015, the Veteran received a pair of 10 percent ratings for her bilateral lower radiculopathy under 38 C.F.R. § 4.124a, DC 8520 (addressing paralysis of the sciatic nerve). Ratings under this diagnostic code are based on incomplete paralysis to the following extent:
* Mild (10 percent)
* Moderate (20 percent) 
* Moderately severe (40 percent)
* Severe, with marked muscular atrophy (60 percent)
* Complete paralysis (80 percent)
38 C.F.R. § 4.124a, DC 8520.

The Board finds that the Veteran is entitled to a pair of 20 percent ratings for the radiculopathy in her lower extremities for the period prior to September 23, 2015. Specifically, at her VA examination in June 2009, lumbar sensory function was observed to be impaired, most notably in the upper anterior thighs and medial legs. 

However, a rating in excess of 20 percent is not warranted, as partial paralysis that is "severe" in nature has not been shown. Specifically, at the same VA examination in June 2009, her reflexes were still normal in the lower extremities, and there was no lumbosacral motor weakness. 

Since September 23, 2015

As was noted previously, the Veteran was assigned a 40 percent rating as of September 23, 2015, under DC 5243, which requires incapacitating episodes having a total duration of 4 weeks but less than 6 weeks during the last 12 months. 

As an initial matter, the Board determines that the 20 percent rating assigned prior to September 23, 2015, based on limitation of motion under 38 C.F.R. § 4.71a, DC 5237, as well as the combined with the 20 percent ratings assigned for radiculopathy in the lower extremities under 38 C.F.R. § 4.124a, DC 8520, should continue for this period on appeal as well. Since the assigned ratings under these diagnostic codes represent a greater benefit, these ratings should be applied in lieu of the single rating under 38 C.F.R. § 4.71a, DC 5243. 

Indeed, it does not appear that a rating under DC 5243 would not be appropriate. While a private physician who conducted a September 2015 examination noted at incapacitating episodes for at least 4 weeks, but less than 6 weeks over the past 12 months, a VA examiner in October 2016 noted no incapacitating episodes over the past 12 months. Moreover, the Board assigns the private physician's opinion less probative value. There is no evidence in the claims file documenting any incapacitating episodes with doctor-prescribed bedrest. Although the Board does not dispute that the Veteran may have missed work due to her disability, she must also have been prescribed bed rest by a physician to meet the criteria. As such, the Board finds that the Veteran did not have incapacitating episodes as defined in the context of VA disability benefits.

However, the Board also finds that a rating in excess of 20 percent is warranted based on limitation of motion for the period since September 23, 2015. Specifically, during the Veteran's September 2015 examination, administered by her own physician, the Veteran reported flare-ups that force her to miss work and go to bed. She exhibited a forward flexion of 45 degrees, which is far in excess of what was required for a higher rating. The physician noted that there was less movement than normal, pain on movement, interference with sitting, and interference with standing. However, this measurement did not change even after taking into consideration the functional loss caused by repetitive motion as well as the DeLuca factors. There was no evidence of ankylosis. 

During her October 2016 VA examination, administered by a VA examiner, the Veteran reported flare-ups that resulted in pain levels at 10/10 for 2 to 3 days. At the time, she was seeing a pain management specialist to address her pain. The examiner reported that she had to help the Veteran undress before the examination and dress after the examination. Similar to the previous examination, the examiner noted 45 degrees of forward flexion - a number that did not change even after repetitive testing. Although the examiner noted that pain and lack of endurance caused additional functional loss, measuring such a loss would require speculation. 

Therefore, after determining that a forward flexion of 30 degrees or less has not been shown as well as the absence of ankylosis, the evidence demonstrates that the Veteran did not meet any of the criteria necessary for a 40 percent rating for the appeal period since September 23, 2015. 

Similarly, ratings in excess of 20 percent are not warranted for neurological abnormalities in the lower extremities are also not warranted. Specifically, during her September 2015 examination, she exhibited decreased sensation to light touch throughout most of her left leg. Her muscle strength and reflex testing was normal. With regards to the lower left extremity, the physician indicated that there was severe intermittent pain, mild dull pain, moderate paresthesias and/or dysesthesias, and moderate numbness. The physician concluded that she exhibited moderate radiculopathy in her left leg with her right leg unaffected. 

The October 2016 VA examination revealed moderate radiculopathy. Specifically, her muscle strength was normal, but she exhibited absent deep tendon reflexes of the right knee. She showed decreased sensation to touch in half of her left leg. With regards to the lower right extremity, the physician indicated that there was severe constant pain, severe paresthesias and/or dysesthesias, and severe numbness. With regards to the lower right extremity, the physician indicated that there was severe constant pain, severe intermittent pain, severe paresthesias and/or dysesthesias, and severe numbness. The examiner concluded that the Veteran exhibited moderate radiculopathy in both legs. Such a conclusion reflects the decreased sensation with only a rare absence of reflexes. It also reflects the normal muscle strength exhibited by the Veteran.

The Board finds that the consistent conclusions of the two physicians who evaluated the Veteran's radiculopathy does not warrant a rating in excess of 20 percent for either lower extremity. The Board acknowledges that while the physician noted no radiculopathy of the Veteran's right leg during her September 2015, the VA examiner noted moderate radiculopathy in October 2016. 

In considering the appropriate disability ratings, the Board has also considered the Veteran's statements that her disability is worse than the rating she currently receives. In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. See Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990).

Competency of evidence differs from weight and credibility. While the Veteran is competent to report symptoms because this requires only personal knowledge as it comes to her through her senses, she is not competent to identify a specific level of disability of her lumbar spine disability according to the appropriate diagnostic codes. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify"). 

On the other hand, such competent evidence concerning the nature and extent of the Veteran's lumbar spine disability has been provided by the medical personnel who have examined her during the current appeal and who have rendered pertinent opinions in conjunction with the evaluations. The medical findings (as provided in the examination reports) directly address the criteria under which these disabilities are evaluated.

Finally, although the Veteran has submitted evidence of a medical disability, and made a claim for the highest rating possible, she has not submitted evidence of unemployability due specifically to her service-connected disabilities. As the Veteran was employed at the time of her last VA examination, the question of entitlement to a total disability rating based on individual unemployability due to service-connected disabilities has not been raised. See Rice v. Shinseki, 22 Vet. App. 447 (2009); Roberson v. Principi, 251 F.3d 1378 (Fed. Cir. 2001).


ORDER

From February 23, 2009, to prior to September 23, 2015, the criteria for a rating in excess of 20 percent for lumbar spine intervertebral disc syndrome, also diagnosed as L2-L4 sensory deficits in the external cutaneous nerve and sciatic nerve, is denied.

From September 23, 2015, onwards, the criteria for a 20 percent rating, but no more, for lumbar spine intervertebral disc syndrome, also diagnosed as L2-L4 sensory deficits in the external cutaneous nerve and sciatic nerve, is granted, subject to the laws and regulations governing the payment of monetary benefits.

From February 23, 2009, onwards, the criteria for a 20 percent rating, but no more, for radiculopathy of the lower left extremity associated with lumbar spine intervertebral disc syndrome, also diagnosed as L2-L4 sensory deficits in the external cutaneous nerve and sciatic nerve, is granted, subject to the laws and regulations governing the payment of monetary benefits.

From February 23, 2009, onwards, the criteria for a 20 percent rating, but no more, for radiculopathy of the lower right extremity associated with lumbar spine intervertebral disc syndrome, also diagnosed as L2-L4 sensory deficits in the external cutaneous nerve and sciatic nerve, is granted, subject to the laws and regulations governing the payment of monetary benefits.


REMAND

The Veteran has filed a claim for service connection for an acquired psychiatric disorder, to include PTSD, to also include associated hair loss. 

Service connection for PTSD requires medical evidence diagnosing the condition in accordance with 38 C.F.R. § 4.125(a), a link, established by medical evidence, between current symptoms and an in-service stressor; and credible supporting evidence that the claimed in-service stressor occurred. 

A valid diagnosis of PTSD requires that a person has been exposed to a traumatic event in which both of the following were present: (1) the person experienced, witnessed, or was confronted with an event or events that involved actual or threatened death or serious injury, or a threat to the physical integrity of herself or others, and (2) the person's response involved intense fear, helplessness, or horror.

There are special considerations for PTSD claims predicated on a personal assault. The pertinent regulation, 38 C.F.R. § 3.304 (f)(5), provides that PTSD based on a personal assault in service permits evidence from sources other than the Veteran's service records which may corroborate his or her account of the stressor incident. Examples of such evidence include, but are not limited to: records from law enforcement authorities, rape crisis centers, mental health counseling centers, hospitals, or physicians; pregnancy tests or tests for sexually transmitted diseases; and statements from family members, roommates, fellow service members, or clergy. 38 C.F.R. § 3.304(f)(5). 

Evidence of behavior changes following the claimed assault is one type of relevant evidence that may be found in these sources. Examples of behavior changes that may constitute credible evidence of the stressor include, but are not limited to: a request for a transfer to another military duty assignment; deterioration in work performance, substance abuse, episodes of depression, panic attacks, or anxiety without an identifiable cause; or unexplained economic or social behavior changes. 38 C.F.R. § 3.304(f)(5).

VA will not deny a PTSD claim that is based on in-service personal assault without first advising the claimant that evidence from sources other than the veteran's service records or evidence of behavior changes may constitute credible supporting evidence of the stressor and allowing him or her the opportunity to furnish this type of evidence or advise VA of potential sources of such evidence. In addition, VA may submit any evidence that it receives to an appropriate medical or mental health professional for an opinion as to whether it indicates that a personal assault occurred. 38 C.F.R. § 3.304(f)(5). 

It is important to note that, for personal assault PTSD claims, an after-the-fact medical opinion may serve as the credible supporting evidence of the reported stressor. Patton v. West, 12 Vet. App. 272, 280 (1999). Additionally, a veteran's failure to report an in-service sexual assault to military authorities may not be considered as relevant evidence tending to prove that a sexual assault did not occur. AZ v. Shinseki, 731 F.3d 1303 (Fed. Cir. 2013).

Here, the Veteran has stated that she was sexually assaulted as she was entering her barracks room in Camp Lejeune, North Carolina in October 1991. The Veteran, who was pregnant at the time, stated that as a result of the sexual assault, she developed episodes of depression and obsessive overeating, among other behavior changes. The Board notes that there are numerous records documenting the Veteran's struggles with weight control in her military personnel records. In fact, she was formally placed on a weight control program in November 1992, less than a year after her sexual assault was claimed to take place. In a November 2015 medical visit, she depicted the event with further detail and endorsed hypervigilance. At the end of that medical visit, the Veteran was granted entrance into a military sexual trauma program. Based on the Veteran's detailed description of the event, her documented behavioral changes in service, and the fact that VA has admitted the Veteran into its military sexual trauma program, the Board finds that the Veteran was sexually assaulted in service.

Despite documented mental health treatment, it appears that the Veteran was never formally diagnosed with an acquired psychiatric disorder by a medical professional. As a result of the Veteran's confirmed stressor and mental health treatment, the Board finds that an initial examination is warranted to determine the etiology of her claimed acquired psychiatric condition and whether it is related to her military service. See McLendon v. Nicholson, 20 Vet. App. 79 (2006). During that examination, the examiner will also explore the relationship, if any, of the Veteran's claimed hair loss to her claimed acquired psychiatric disorder. 

Accordingly, the case is REMANDED for the following action:

1. Obtain all treatment records from the VA Medical Center in Jacksonville, since March 2016, as well as from any VA facility from which the Veteran has received treatment. If the Veteran has received additional private treatment, she should be afforded an appropriate opportunity to submit them.

2. Schedule the Veteran for a VA examination to determine the nature and etiology of her claimed acquired psychiatric disorder. The claims folder must be made available to and be reviewed by the examiner. All tests deemed necessary should be conducted and the results reported in detail. 

After review of the claims file and examination of the Veteran, the examiner should state specifically whether it is at least as likely as not (a degree of probability of 50 percent or higher) that the Veteran's claimed acquired psychiatric disorder is etiologically related to her military service. 

The examiner should also discuss whether it is at least as likely as not that the Veteran's hair loss is etiologically related to her military service, to include as due to her claimed acquired psychiatric disorder. 

All opinions must be accompanied by an explanation. If the examiner opines that the above question cannot be resolved without resorting to speculation, then a detailed medical explanation as to why this is so must be provided.

3. Following any additional indicated development, the AOJ should review the claims file and adjudicate the Veteran's claim for service connection an acquired psychiatric disorder. If the benefits sought on appeal remain denied, the Veteran and her representative should be furnished a supplemental statement of the case and given the opportunity to respond thereto before the case is returned to the Board.

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
B.T. KNOPE
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs